2644.  ATLANTIC COAST LINE R. CO. *v.* BLALOCK.

1. The court did not err in overruling the general demurrer; and, the objection made by the only special demurrer which was well taken having been cured by amendment, there was likewise no error in overruling the special demurrers and in refusing to dismiss the petition.

2. An exception based upon the refusal of the court to award a nonsuit will not be considered, where, subsequently thereto, the case is submitted to the jury, and, a verdict being rendered against the defendant, a motion for a new trial is made which presents the complaint that the verdict is contrary to the evidence and without evidence to support it. Where a motion for a new trial is based upon this ground, the court will review the sufficiency of the evidence as a whole, in the light of the verdict, and will not merely consider the sufficiency of the plaintiff's case to withstand the nonsuit at the particular stage at which the motion for nonsuit was made.

3. Even though a train-hand was employed under a schedule of wages to serve as a flagman between two designated points, this fact would not prevent his recovering on a quantum meruit for additional services not provided for in the schedule of rates, if he was directed to perform

such additional services and did perform them satisfactorily. Evidence that an employer pays a stipulated amount for certain services may afford a basis for the conclusion that the rendition of one half of the given service would be worth one half of the amount at which the whole service was valued.

4. A receipt, being only prima facie evidence of payment, is subject to be denied or explained by parol evidence; and if the explanation given is satisfactory, the receipt may be disregarded by the jury.

DECIDED JULY 5, 1910.  REHEARING DENIED JULY 19, 1910.

Complaint; from city court of Tifton—Judge Eve. April 4, 1910.

*Bennet & Branch, George E. Simpson,* for plaintiff in error.

*C. C. Thomas,* contra.

RUSSELL, J.  1.  Blalock brought suit on account against the Atlantic Coast Line Railroad Company, attaching to his petition an itemized statement of the services rendered by him as flagman, and allowing credit for certain payments made him by the defendant, and showing a balance in his favor of $184.95.  He alleged that he went into the employ of the defendant company under their schedule of wages for trainmen and yardmen which was effective March 1, 1907, and under which, as he alleged, all flagmen of the company worked and received their pay.  He alleged that the schedule of wages for flagmen on local freight-trains between Tifton and Waycross for one continuous trip a day was $45 per month; that the schedule of wages between Waycross and Brunswick for a round trip each day was $45 per month; that he was required and directed by the defendant to make the run between Tifton and Waycross each day, for which he was entitled, under the schedule, to be paid at the rate of $45 per month, and also, in addition to this, as he was required to make one half of the round trip between Waycross and Brunswick each day, in addition to the regular daily run between Tifton and Waycross, he was entitled for this half round trip to one half of the amount set forth in the schedule of wages for a round trip, to wit, at the rate of $22.50 per month.  He alleged that during the term of his service he earned $525.60, but had only been paid $340.65; leaving a balance of $184.95 due him, as appeared by his statement of account attached.  Plaintiff further alleged a demand for payment, and averred that when he placed his claim in the hands of an attorney and demand was made by his attorney, he was immediately discharged because said demand was made.

The defendant demurred to the petition generally, upon the ground that it failed to set forth a cause of action, and also demurred specially, upon several grounds, which it is not necessary to state in extenso. As to that portion of the petition which alleged that the petitioner was immediately discharged because of his demand, the court sustained a demurrer based upon the ground that this impertinent and irrelevant statement was calculated to prejudice the rights of the defendant. In response to this ruling, that portion of the petition was stricken by the plaintiff. When this had been done, the trial judge properly refused to dismiss the petition. It is certainly not subject to a general demurrer. Nor do we think that the plaintiff was required to attach a schedule of wages adopted. The contents of this schedule were not a matter of pleading, but of evidence. So far as the petition was concerned, the definite and detailed reference to the schedule gave the defendant ample opportunity to object to it or defend against it in case it was introduced.

The second special demurrer, based upon the ground that the petition does not allege that the schedule did not provide for wages for a one-way run, as run by the plaintiff between Tifton and Brunswick, was, for a similar reason, not well taken; and furthermore the demurrer was without merit because it was naturally inferable that the schedule did not provide for a one-way run; from the fact that the plaintiff stated that the provision of the schedule upon that subject was for a double-run return trip, or a run each way. It was likewise immaterial, as held by the court below, in what manner the schedule was promulgated; and the statement that all of the flagmen of the company worked and received pay under the schedule might well be held irrelevant, but it is not objectionable as being a conclusion of the pleader. It is plainly a statement of fact. The statement that the plaintiff was entitled to one half the amount set forth in the schedule of wages for the round trip, viz.: the rate of $22.50 per month for making one half of the round trip, is not a conclusion of the pleader in one sense, while it may be in another. It is more properly a statement of the pleader of the amount of the plaintiff's demand, as the net result of his figures shown by the statement of the account and the facts previously detailed in the petition. Such a summary of the plaintiff's case is always allowable, although it may be opinionative. The plaintiff

who sues for $5,000 damages merely states that in his opinion the injury has damaged him $5,000, basing this opinion upon the antecedent facts which he alleges to exist. The court did not err in overruling the general demurrer, and the objection to the only special demurrer which was well taken having been cured by amendment; there was likewise no error in overruling the special demurrers and in refusing to dismiss the petition.

2. At the conclusion of the evidence for the plaintiff, the defendant made a motion for nonsuit, which was overruled, and the case proceeded to trial, resulting in a verdict in favor of the plaintiff. This court has several times held that an exception based upon a refusal to allow a nonsuit is nugatory if the case proceeds to trial and the complaint is thereafter made by the defendant that the finding of the jury was without evidence to support it. In such a case, even if the court erred in not awarding a nonsuit at the time the motion was made, yet if, considering the evidence as a whole, the verdict is right, the error becomes immaterial. In such event it can not be said that the court abused its discretion in opening the case to further testimony; and even though some of the testimony in support of the verdict may have come from the defendant himself, it would be immaterial if the evidence, taken as a whole, supported the verdict of the jury. An exception based upon the refusal of the court to award a nonsuit will not be considered where, subsequently thereto, the case is submitted to the jury and, a verdict being rendered against the defendant, a motion for a new trial is made which presents the complaint that the verdict is contrary to the evidence and without evidence to support it. Where a motion for a new trial is based upon this ground, the court will review the sufficiency of the evidence as a whole, in the light of the verdict, and will not merely consider the sufficiency of the plaintiff's case to withstand the motion for nonsuit at the particular stage at which the motion for nonsuit was made. In *Ellenberg* v. *Southern Ry. Co.*, 5 *Ga. App.* 390 (63 S. E. 240), we held that the discretion of the judge should be liberally exercised in behalf of allowing the whole case to be presented, and that, "except in rare cases, as where the defendant would be subjected to unfairness or undue prejudice, or where the plaintiff has given evidence of intention deliberately to trifle with the court, or to delay the progress of the trial, it is an abuse of discretion for the trial judge to refuse to allow

the plaintiff to produce additional evidence sufficient to avoid a nonsuit." As, in the broader light of our advancing intelligence, we more plainly see that the object of the trial is to reach the truth, the less is a progressive profession inclined to tolerate the observance of any technical rule which will tend only to test the skill and vigilance of the counsel, when it is at the expense of the real justice of the case.

3. Upon the trial the plaintiff testified, that he was employed as a flagman, and that at the time of his employment the schedule of rates (which was later introduced in evidence) prescribed a salary of $45 per month for a daily run between Tifton and Waycross, and $45 per month for a run each way (that is, going daily and returning the same day) between Waycross and Brunswick. There was no express contract (according to the plaintiff's testimony) between himself and the company, and the amount of his wages was only inferable from the amount fixed by the schedule. He testified that two crews were doing the work which should be performed by three crews of trainmen. In this latter statement he was corroborated by other testimony in the case. On the 8th of each month during the period of his service he was paid certain amounts which, upon examination, we find to be correct, if his wages were calculated as being $45 per month, but which would not be payment for the time served by him in any of the months if, as testified by him, he performed additional services to those which (as prescribed by the schedule) would entitle him to $45 per month. The whole point in the case is whether the plaintiff was entitled to recover anything on a quantum meruit for a half run per day between Waycross and Brunswick, because the schedule is silent as to any such service as this. The schedule of wages allows trainmen $45 per month for a daily trip between Waycross and Brunswick and return. It says nothing as to the compensation of a trainman who, in addition to making the daily trip between Tifton and Waycross, is required to go on to Brunswick, and the next day return from Brunswick to Waycross, serving the company as a trainman, before proceeding on his regular run from Waycross to Tifton. It is undisputed that the plaintiff performed this service. In other words, he made a flagman and a half. He received pay for one flagman. The company refused to pay him for the additional service performed between Waycross and Brunswick, although his

service, in the way the trains were arranged, and performance of like service on the part of another flagman, enabled the company to dispense with the third flagman who was ordinarily required, and who, according to the testimony, was "cut out."

Counsel for the railroad company takes the position that the adoption of the schedule of rates, and the entrance of the plaintiff into the employment of the company, under the schedule of rates, created a contract which precluded the plaintiff from recovering anything upon a quantum meruit. The trial judge seems to have entertained a contrary view; and we concur in the opinion, evidently entertained by him, that the mere fact that the contract (if one may be said to have been made by the schedule of rates) fixed the value of the plaintiff's service, as a flagman between Tifton and Waycross, would not prevent him from receiving a proper compensation, without regard to the contract, for any extra services he might perform, not included in the contract. As the plaintiff testified that he was directed to perform the service of a flagman between Waycross and Brunswick, it is undisputed that the defendant knew he was performing it, and received the benefit of his services. If the schedule of rates contained no provision for this service, is it just and right that the defendant, for that reason, should receive services in addition to those prescribed by the schedule of rates, without compensation? We think not. It is true that there is evidence to the effect that the plaintiff agreed to perform the entire service rendered by him between Tifton and Brunswick for $45 per month; and if this was the truth, the plaintiff was not entitled to recover anything for services performed by him in addition to those provided for by the schedule of rates. But the plaintiff positively denied the testimony to that effect; and the credibility of the witnesses, and the ascertainment of the truth as to this point, was a matter exclusively for determination by the jury. Granting that the jury were authorized to find that the plaintiff performed services in addition to the services prescribed for the run between Tifton and Waycross, and the value of which was fixed by the schedule of rates, and that he was entitled to some compensation therefor, we do not see that there could be any fairer means of ascertaining the true value of such extra service than that adopted by the jury. The schedule of rates was introduced before the jury without objection; and, in fact, the defendant had

demurred to the petition because it was not attached thereto. This schedule of rates showed that the valuation fixed by the company upon a run between Waycross and Brunswick, going both ways in one day, was $45 per month. The plaintiff testified that he was required to go one way each day. Were not the jury authorized, from these facts, to infer, as well as if it had been a matter of expressed testimony, that if two trips between Waycross and Brunswick daily, for a month, were worth $45 a month, one daily trip between the same points would be worth one half as much? It seems so to us; and therefore, agreeing with the contention of the counsel for the plaintiff in error that the plaintiff in the court below was required to establish the value of his extra services by quantum meruit, we think the trial judge properly overruled the motion for a new trial, over the objections that the evidence was improperly admitted on the trial, and that the verdict was not sufficiently supported by the testimony.

4. Considerable stress is laid upon the fact that Blalock signed the pay-roll of the defendant company, acknowledging receipt *in full* of all the amounts claimed by him, except $15.10, which was tendered him by the company. Blalock did not deny signing these receipts; and they might have afforded a conclusive circumstance to rebut every contention he maintained with regard to what he should receive for his services. The receipts might also have served to satisfy the jury that there had been complete accord and satisfaction. However, Blalock explained these receipts, as he had a right to do; and, in view of the finding of the jury, it must be held that his explanation was satisfactory. Under section 5208 of our Civil Code, "receipts for money are always only prima facie evidence of payment, and may be denied or explained by parol." According to Blalock's testimony, he never knew that the receipts purported to be in full, and he was constantly asking for payment for his extra services and expecting to receive it. According to his testimony, the payments were mutually understood to be only partial payments. According to the verdict of the jury, this was the truth of the case. The trial judge was satisfied with the finding of the jury, and it is not within our power to say that the verdict did not speak the truth.          *Judgment affirmed.*